IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                          No. 11 CR 2015 MV

JASON ALLEN HUNTER,

    Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on the Government's Motion in Limine for Pre-Trial Determination of Indian Country Land Status (Doc. 31), filed March 22, 2012. The Government amended the motion on June 8, 2012. The Court held a hearing on the motion on June 14, 2012. The Court has considered the Motion, Defendant's Response and the Government's Reply, the parties' post-hearing briefing, and the relevant law, and being otherwise fully informed, **FINDS** that the Motion shall be **GRANTED**. The Court concludes that the land in question is within the exterior boundaries of the Navajo Nation, and therefore is Indian Country for purposes of 18 U.S.C. § 1153.

### BACKGROUND

Defendant Jason Allen Hunter is charged with having committed the following crimes in Indian Country contrary to 18 U.S.C. § 1153: two counts of assault with a dangerous weapon in violation of 18 U.S.C. § 113(a)(3); and using, carrying, and discharging a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c). The Government filed the

1

instant motion for purposes of ascertaining, prior to trial, the status of the land on which the alleged offenses occurred.  The Government seeks only a determination that the land in question is Indian Country, and has not asked the Court to determine whether or not any of the acts comprising the alleged offenses occurred in this location.

Defendant objects to such pre-trial determination, framing the question of land status as "an essential element of the offense" which a jury must find beyond a reasonable doubt.  Doc. 41 at 7.  In addition, Defendant argues that the evidence the Government presented to prove the status of the land is inadmissible.  First, Defendant argues that the evidence is hearsay and does not fall within any established hearsay exception.  Second, Defendant argues that the evidence, even if it were to fall within a hearsay exception, has not been properly authenticated.  Finally, at the hearing Defendant raised an argument he had not raised in his pre-hearing brief: the maps and other documents the Government introduced to prove land status violate Defendant's confrontation rights under the Sixth Amendment.[1]

## DISCUSSION

Defendant makes a general objection to the Court's determination of land status prior to trial, framing this determination as resolving an element of the offense.  In addition, he objects to the Court's consideration of the following items of evidence in making the land status determination: (1) Government Exhibit 1 – the declaration of Mary Lujan, the Shiprock Agency Realty Officer for the Bureau of Indian Affairs (BIA); (2) Government Exhibit 4 – a map of the section of land on which the Government alleges that the offense occurred; and (3) Government

---

[1] At the conclusion of the hearing, the Court informed counsel that it was unprepared to address the issue of confrontation, as the parties had not briefed it, yet defense counsel framed it as "the central issue" at the hearing. *See* 6/14/12 Tr. of Evid. Hr'g at 8:4.  Counsel for Defendant stated that she and co-counsel had, in fact, raised confrontation in the defense's brief.  Aside from the following sentence on the final full page of the brief – "Furthermore, Mr. Hunter has the right to confront the testimony against him at trial," Doc. 33 at 9 – counsel did not brief the issue of confrontation.

Exhibit 5 – a demonstrative map of the Navajo Nation which includes a highlighted area labeled "places of interest," denoted with land tract and section numbers.

## I.      Legal Determination of Land Status

The Major Crimes Act makes it a federal crime to commit any of a number of offenses in Indian Country.  *See generally* 18 U.S.C. § 1153.  The fact that an offense occurred within the boundaries of Indian Country is an essential element of any offense listed in the Major Crimes Act.  *See*, *e.g.*, Tenth Circuit Pattern Jury Instruction 2.52 (2011) (listing as an element that the offense "took place within the [territorial] [special maritime] jurisdiction of the United States").  Nonetheless, the Tenth Circuit, along with a number of its sister circuits, has held that it is proper for a district court to make a limited determination prior to trial that a particular piece of land is situated in Indian Country.  Such determination does not deprive a criminal defendant of his right to have a jury find each element of the offense beyond a reasonable doubt, because the jury still must determine that the offense occurred at the location in question.

In *United States v. Roberts*, 185 F.3d 1125 (10th Cir. 1999), a case involving a sex offense in Indian Country, the district court determined as a matter of law that the land in question was Indian Country, and so instructed the jury.  On appeal, the defendant argued that this instruction "relieved the government of its burden of proving an essential element of the crime."  *Id*. at 1138.  The Tenth Circuit did not find the defendant's argument persuasive, stating that he "confuses the legal issue of jurisdiction with the factual question of locus of the offense." *Id*.  The court noted that, "[a]s a general matter, the trial court decides the jurisdictional status of a particular property or area and then leaves to the jury the factual determination of whether the alleged crime occurred at the site."  *Id*. at 1139 (citing *United States v. Hernandez–Fundora,* 58

3

F.3d 802, 812 (2d Cir. 1995), *United States v. Warren,* 984 F.2d 325, 327 (9th Cir. 1993), and *United States v. Bridges,* 43 F.3d 1468 (table), 1994 WL 687301, *1 (4th Cir.1994)).  The Tenth Circuit accordingly concluded that it was proper for the district court to instruct the jury that the location in question was in Indian Country, and leave to the jury the task of determining whether the alleged offense occurred at the particular location.

Defendant highlights the fact that the court in *Roberts* did not *require* district courts to determine land status prior to trial.  Nothing in *Roberts*, argues Defendant, would prohibit the Court from allowing the question of land status to go to the jury.  The Government responds that resolution of this question prior to trial is preferable for a number of reasons.  First, the Government argues that charging the jury with resolving this question would waste the jury's time and confuse the issues.  The Government further cites a double jeopardy concern: should the jury acquit Defendant solely on grounds that the Government failed to prove land status beyond a reasonable doubt, the verdict would not be appealable.  However, a state court would refuse to try Defendant on this offense because it would conclude it had no jurisdiction.  Accordingly, if the question of land status routinely went to the jury, any given location could be Indian Country in one trial, and non-Indian Country in another trial.

The Court finds the Government's reasoning, as well as the out-of-circuit case law addressing this question, to be persuasive.  In *Roberts*, the court noted that a number of its sister circuits "have had the opportunity to state, in dicta, the trial court should *not* submit to the jury the question of whether a particular tract of land or geographic area is Indian Country."  185 F.3d at 1140.  The Second Circuit has explained that "the locus of the crime" is a factual element that must go to the jury, whereas land status is essentially a legal question of "whether the federal

4

government has accepted jurisdiction." *United States v. Hernandez-Fundora*, 58 F.3d 802, 810 (2d Cir. 1995) (quotation omitted). Other courts have gone so far as to find that submission of the question of land status to the jury was error, albeit non-reversible error. In *United States v. Stands,* 105 F.3d 1565, 1575 (8th Cir. 1997), the Eighth Circuit held that "given a particular piece of land, it is for the court, not the jury, to determine whether that land is in Indian country." In *United States v. Levesque,* 681 F.2d 75, 78 (1st Cir. 1982), the First Circuit held that the question of land status is "a jurisdictional fact susceptible of determination without reference to any of the facts involved in determining defendants' guilt or innocence." In *Stands*, cited by the Tenth Circuit in *Roberts*, the Eighth Circuit emphasized the fact that the question of land status "is analytically distinct from [the question of] whether the crime in fact occurred on a particular piece of land or within a particular area. The latter question – the location of the crime – is certainly a factual issue for the jury." 105 F.3d at 1575-76.

      Defendant cites *United States v. Prentiss*, 256 F.3d 971 (10th Cir. 2001) (en banc), for the proposition that the question of land status is not simply jurisdictional, but rather goes to an essential element. In *Prentiss*, the Tenth Circuit stated: "If the Government alleged, but failed to prove [the proper ethnic status of the defendant and his victim], we would not say the district court was deprived of subject matter jurisdiction to hear the case; rather we would say Defendant was entitled to acquittal." *Id*. at 981. However, unlike the question of whether or not an offense occurred in Indian Country, the ethnic status of the defendant and victim cannot be separated into two inquiries, so determination of these elements as jurisdictional questions would usurp the jury's function. In contrast, in the case of land status, a court can first determine whether the

5

land in question is in Indian country, yet the jury still must find beyond a reasonable doubt that the offense occurred there.

The Court finds that a pretrial determination of land status will promote efficiency in this proceeding and will in no way deprive Defendant of his right to a jury trial. If the Court concludes that the area in question is Indian Country, the Government must still prove at trial, beyond a reasonable doubt, that the alleged offense occurred at this location. This satisfies the constitutional requirement that all elements of the offense be submitted to the jury and proven beyond a reasonable doubt. *See In re Winship,* 397 U.S. 358, 364 (1970); *see also* Tenth Circuit Pattern Jury Instruction 2.52 ("You are instructed that the alleged murder occurred within the [territorial] [special maritime] jurisdiction of the United States, if you find beyond a reasonable doubt that such offense occurred in the location described in the indictment.").

## II.    Evidence in Support of Land Status Determination

As noted above, Defendant objects to the Court's consideration of the following three items of evidence: (1) Government Exhibit 1 – the declaration of Mary Lujan, the Shiprock Agency Realty Officer for the Bureau of Indian Affairs (BIA); (2) Government Exhibit 4 – a map of the section of land on which the Government alleges that the offense occurred; and (3) Government Exhibit 5 – a demonstrative map of the Navajo Nation which includes a highlighted area labeled "places of interest," denoted with land tract and section numbers. Defendant's various objections fall into one or more of three general categories: the evidence is hearsay and does not fall within any recognized hearsay objection, the documents have not been properly authenticated, and the evidence violates Defendant's Sixth Amendment right to confront the witnesses against him.

### A.  Defendant's Confrontation Clause Argument

Defendant argues that the Court's consideration of the Government's exhibits violates his confrontation rights as set forth in *Crawford v. Washington*, 541 U.S. 36 (2004) and its progeny. More specifically, Defendant cites *Melendez-Diaz v. Massachusetts*, 129 S. Ct. 2527 (2009) and *Bullcoming v. New Mexico*, 131 S. Ct. 2705 (2011) in support of his argument that neither the map of the section of land which includes Sheep Springs, nor the demonstrative map of the Navajo Nation, may be introduced against him. Because he has not had the opportunity to cross-examine every individual who participated in the creation of the maps, Defendant believes that *Melendez-Diaz* and *Bullcoming* preclude their consideration by the Court.

Defendant makes this argument prematurely, as the right to confrontation is a right criminal defendants enjoy *at trial*, and it does not apply to pretrial proceedings. The Sixth Amendment provides: "*In all criminal prosecutions*, the accused shall enjoy the right . . . to be confronted with the witnesses against him[.]" U.S. Const. amend. VI (emphasis added). In *Crawford*, the Supreme Court held that the Confrontation Clause applies not only to in-court testimony, but also to "out-of-court statements *introduced at trial*" regardless of the applicable rules of evidence. 541 U.S. at 50-51 (emphasis added). Other courts have observed that *Crawford's* holding is rooted in the fact that the right to trial is a constitutional right, and have accordingly concluded that extension of *Crawford* to a pretrial hearing that is not constitutionally mandated would be improper. *See*, *e.g.*, *Peterson v. California*, 604 F.3d 1166, 1169 (9th Cir. 2010) ("As the preliminary hearing itself is not constitutionally required, it follows that there are no constitutionally-required procedures governing the admissibility of hearsay at preliminary hearings.").

7

The case law interpreting and applying *Crawford* makes clear that the right to confrontation is a trial right.  *See*, *e.g.*, *Bullcoming*, 131 S. Ct. at 2713 ("As a rule, if an out-of-court statement is testimonial in nature, it may not be introduced against the accused at trial unless the witness who made the statement is unavailable and the accused has had a prior opportunity to confront that witness."); *Melendez-Diaz*, 129 S. Ct. at 2531 ("A witness's testimony against a defendant is thus inadmissible unless the witness appears at trial or, if the witness is unavailable, the defendant had a prior opportunity for cross-examination."); *United States v. LaVallee*, 439 F.3d 670, 692 (10th Cir. 2006) ("The right to confrontation is a *trial* right, designed to prevent improper restrictions on the types of questions that defense counsel may ask during cross-examination." (quoting *Pennsylvania v. Ritchie*, 480 U.S. 39, 51 (1987)); *United States v. Mitchell-Hunter*, 663 F.3d 45, 51-52 (1st Cir. 2011) (noting that the defendant "does not point to a single case extending the right to confrontation beyond the context of trial, although there is extensive case law declining to apply the confrontation right to various pre- and post-trial proceedings" and concluding: "While *Crawford* made clear that the admission of certain testimonial hearsay would violate the Confrontation Clause absent an opportunity for cross-examination and the unavailability of the declarant a violation would only occur if these statements were introduced at trial."); *Peterson*, 604 F.3d at 1169 ("[T]he United States Supreme Court has repeatedly stated that the right to confrontation is basically a trial right.").

Defendant has identified no authority that would serve as a basis for extending the right to confront witnesses to a pretrial hearing.  To the extent that Defendant argues that the Confrontation Clause applies here because the Court is deciding an essential element of the crime, the Court has already rejected this argument.  The determination of land status is not an

8

essential element, because the government must still meet its burden of proving at trial that the alleged offense occurred at the location in question. At trial, Defendant will have the opportunity to cross-examine those witnesses the Government will present to prove this element.

### B.     Expert Testimony of Mary Lujan

At the hearing, the Government tendered Mary Lujan, realty officer at the Shiprock Agency of the Bureau of Indian Affairs (BIA), as an expert witness. Ms. Lujan has worked for the Shiprock Agency realty office for 33 years and has been the realty officer for eight years, where her primary job duty is to determine whether a given piece of land is in Indian Country. It is her standard practice to receive GPS coordinates from an investigator and enter those coordinates into a mapping system called "All Topo," which in turn determines the relevant section, township and range from the public land survey. Ms. Lujan then enters this information into the BIA records system, called Trust Asset and Accounting Management System ("TAAMS"), which in turn generates the tract number in which the location is situated. TAAMS then generates a report that conclusively states whether or not the location in question is in Indian Country. Ms. Lujan stated that in her experience, this process has been accurate in all but one case, where the land in question was in a checkerboard area of the Navajo Nation. Ms. Lujan has never discovered an error in the TAAMS system with respect to land in the Sheep Springs area.

At the hearing, Defendant objected to the Government's presentation of Mary Lujan as an expert witness. As grounds for the objection, defense counsel stated that Ms. Lujan was not qualified as an expert, but at its core, the argument concerned the Confrontation Clause: "[B]ased on Sixth Amendment confrontation grounds, *Bullcoming*, *Crawford*, and *Melendez-Diaz*, we

9

would object to having her testify as a witness today because she has no firsthand knowledge of how the GPS coordinates and how this evidence was obtained[.]" 6/14/12 Tr. Evid. Hr'g at 21:19-24.  Counsel stated that while Ms. Lujan "ha[d] qualifications," she was not qualified to testify as to land status in this case, because she received the GPS coordinates of the location at issue from someone else.  In response, counsel for the Government stated that it did not intend at this juncture to prove that the GPS coordinates were in any way related to the charged offense.  Rather, the GPS coordinates were "the starting point" for Ms. Lujan's work. *Id*. at 22:18.  Over the defense's objection, the Court recognized Ms. Lujan as an expert.

      Further testimony confirmed that although Ms. Lujan was not the first person to determine the GPS coordinates in question in this case and enter them into the All Topo or TAAMS systems, she has since entered the relevant information herself.  In so doing, she learned that the GPS coordinates, which she received from Navajo Nation Criminal Investigator Leonard Redhorse, corresponded to the Sheep Springs community (specifically Section 13, Township 22 north, 18 west, New Mexico Principal Meridian).  She testified she customarily receives GPS coordinates from an investigator and enters them in the system to determine land status, rather than going to the land in question and determining the GPS coordinates herself.  Therefore, her testimony comports with the plain language of Rule 703 of the Federal Rules of Evidence.  *See* FED. R. EVID. 703 ("An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed.  If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted.").  The Court concludes that it did not err in

10

recognizing Ms. Lujan as an expert, and it will consider Ms. Lujan's testimony in making its final land status determination.

### C.     Declaration of Mary Lujan

Government Exhibit 1 is a declaration completed by Mary Lujan, which sets forth her role in the instant case with respect to the land status determination. Ms. Lujan first describes her job duties and responsibilities as the Shiprock Agency Realty Officer for the BIA, and then sets forth her conclusion that the location in question in the instant case is situated in Indian Country. She explains that she received GPS coordinates from Navajo Nation Criminal Investigator Leonard Redhorse, and confirmed them to be within the tribal tract identified as 791 T8131. The specific location is near Sheep Springs, New Mexico, and is centrally located within a nine square mile area that is within the Navajo Nation.

Although the Government originally submitted Ms. Lujan's declaration on March 22, 2012, on June 8, 2012 it filed an amended declaration for purposes of correcting a typographical error. Whereas Ms. Lujan's original declaration stated that the location she was asked to investigate was in Section 36, T22N, R18W, NMPM, her amended declaration states that the land in question is in Section 13, T22N, R18W, NMPM. Both locations are within tribal tract 791 T8131. In her amended declaration, Ms. Lujan concludes that the section in question, as well as all sections bordering it, are Navajo Nation Tribal Trust land.

On cross examination of Ms. Lujan, defense counsel first elicited testimony that demonstrated that she had not personally drafted the declaration word-for-word. Rather, counsel for the Government had emailed her suggested changes, which she copied verbatim into her declaration. Defense counsel also repeatedly asked Ms. Lujan if she had signed the first

11

declaration under penalty of perjury, even though it contained a typographical error as to the land section, to which Ms. Lujan responded in the affirmative. Ms. Lujan further testified that in preparation for the hearing, she reviewed her declaration and discovered the error, and proceeded to correct it. On redirect examination, she stated that the typographical error did not affect the substance of her opinion.

Defendant objects to the Court's consideration of Ms. Lujan's declaration on grounds that it is unreliable. Defendant highlights the fact that, although Ms. Lujan states that she received the GPS coordinates from Investigator Redhorse, she herself has no personal knowledge of the specific location of the incident to which the coordinates refer, nor how the coordinates were obtained. The Court is not persuaded by Defendant's argument. Ms. Lujan need not have specific knowledge about the source of the GPS coordinates in order to form an opinion that the location to which they refer is in Indian Country. Defendant's argument is only pertinent to the issue of *what occurred* at the location in question, an issue beyond the scope of this pre-trial hearing. The scope of Ms. Lujan's testimony was limited – she expressed no opinion regarding the alleged offense itself, but rather limited her opinion to whether or not the location that corresponded to the GPS coordinates was situated in Indian Country. As Ms. Lujan's testimony has no bearing on whether or not the alleged offense occurred, her lack of knowledge regarding the alleged offense and the methodology for obtaining the GPS coordinates is irrelevant.

Nor does the Court believe that the issues defense counsel identified on cross examination have any bearing on the declaration's reliability or accuracy. Defendant has identified no basis upon which to conclude that Government counsel's assistance with the text of the declaration is improper. The typographical error, which Ms. Lujan subsequently corrected,

did not affect the substance of her conclusion.  The important matter is that Ms. Lujan reviewed the declaration before signing it, and attested to its accuracy.  The Court will accordingly consider Ms. Lujan's declaration to the extent that it assists the Court in determining whether the location that corresponds to the GPS coordinates provided by the Government is in fact in Indian Country.

> D. **Maps of the Navajo Nation and the Section of Land Where the Alleged Offense Occurred**

At the hearing on its motion in limine, the Government introduced two maps.  Exhibit 4 depicts a square-mile section of land the Government claims is within the exterior boundaries of the Navajo Nation, identified by the coordinates Section 13, Township 22 north, 18 west, New Mexico Principal Meridian.  This section includes the community of Sheep Springs, New Mexico.  Just east of the location identified as Sheep Springs is a circle marked by the GPS coordinates 36 degrees, 08.577 decimal minutes north (latitude), and 108 degrees, 42.189 decimal minutes west (longitude).  Exhibit 5 is a poster-sized map of the Navajo Nation, which is divided into 36-square mile tracts.  Two tracts are highlighted in red and identified as "Places of Interest."  The tracts are labeled T-8130 and T-8131, the latter of which contains Sheep Springs as well as the GPS coordinates identified in Exhibit 4.

Defendant objects to Exhibit 4 on grounds that the government has not documented who prepared it, how it was prepared, or when it was prepared.  Defendant brings this objection under Rules 901 and 902 of the Federal Rules of Evidence.  Defendant further objects to the map as hearsay, arguing that the government has not indicated whether it is a public document, a business record, or any other document that would fall within an exception to the hearsay rule.  Moreover, contends Defendant, Exhibit 4's accuracy is questionable, because not all land within

13

the bounds of a reservation is necessarily Indian Country – Congress may remove lands from an Indian Reservation, and a tribe can cede portions of its land, notwithstanding the fact that the land in question is surrounded by Indian Country.

Mary Lujan's testimony at the hearing on the instant motion in limine resolves Defendant's objections.  As to the hearsay objection, hearsay is a statement (which includes a written assertion) offered into evidence to prove the truth of the matter asserted.  FED. R. EVID. 801.  The map itself was not offered to prove the truth of the matter it asserted; rather, it was offered to aid Ms. Lujan's testimony.  Ms. Lujan, not the map, testified that the area within the boundaries identified on the map was Indian Country.  Therefore, the map is not hearsay.

With respect to Defendant's authentication objection, the Government was required only to "produce evidence sufficient to support a finding that the item is what the proponent claims it is" including testimony from a witness with knowledge that the item "is what it is claimed to be." FED. R. EVID. 901.  Given Ms. Lujan's knowledge and experience, she was properly qualified to authenticate the map by testifying that it was a fair and accurate depiction of the information she received through her research via the All Topo program.  Defendant lodged his final challenge – that the map may not be accurate because not all land within the boundaries of a reservation is necessarily Indian Country – in pre-hearing briefing.  The very purpose of the hearing was for the government to prove that the parcel in question was in Indian Country, notwithstanding the fact that *some* land well within the exterior boundaries of the Navajo Nation may in fact not be Indian land.  The Court will accordingly consider the map as well as Ms. Lujan's testimony in making its final determination regarding land status.

14

Defendant further objects to Government Exhibit 5 – the poster-sized map – on Confrontation Clause, hearsay, and authentication grounds. The Court has already disposed of Defendant's Confrontation Clause argument. He makes the same hearsay argument as he did with respect to Exhibit 4, and the Court's conclusion is the same. The large map is titled "Navajo Indian Reservation: Tract Number Status Classification"; however, the Court does not intend to consider the map to prove that it indeed depicts the entire Navajo Indian Reservation. Nor does the term "Places of Interest" describing the two highlighted tracts affect the Court's conclusion regarding the status of the land. Rather, like the smaller map, the purpose of this demonstrative map was to aid Ms. Lujan's testimony. Ms. Lujan referred to the map in her testimony, and *her* statements, not the map's, inform the Court's analysis regarding whether or not the "places of interest" are situated in Indian Country.

Finally, Ms. Lujan's testimony sufficiently authenticates Exhibit 5. She stated that the map was a fair and accurate depiction of both the Navajo Nation and the location of Sheep Springs. Ms. Lujan's previous testimony laid an adequate foundation to show that she is a "witness with knowledge" for purposes of the Federal Rules of Evidence. *See* FED. R. EVID. 901(b)(1); *see also United States v. Alejandro*, 354 F. App'x 124, 128 (5th Cir. 2009) (computer-generated map sufficiently authenticated when detective testifying regarding location of offense stated that map accurately depicted location, notwithstanding detective's lack of knowledge as to map's creation, validity, and scaling).

### E.     The Court's Findings with Respect to Land Status

Having considered all of the items of evidence described above, the testimony at the hearing on the instant motion, and the parties' arguments and briefs, the Court concludes that the

15

location in question is in Indian Country.  Mary Lujan was a credible witness.  She outlined her credentials and explained that for the past eight years, her primary job duty has been to determine whether or not a given piece of land is in Indian Country.  She testified that after she received the GPS coordinates from Investigator Redhorse, she identified the corresponding section, township and range.  She then entered this information into TAAMS, and extracted the title report for that particular section and corresponding tract.  The title report identified the section as well as the entire tract of land to be land held in trust for the Navajo Nation.  On redirect examination, she affirmed that although other actors had participated in the investigation, their conclusions did not directly inform her opinion as to land status, because she herself entered all of the relevant information into the mapping system in order to verify the precise location.  This is her standard business practice, and in the instant case it allowed her to render her opinion that the location in question is situated in Indian Country.  Ms. Lujan further testified that the location in question is approximately 60 miles from the closest borders with non-Indian lands in Colorado and New Mexico.  This testimony and the corresponding exhibits satisfy the Government's burden of proving that the location immediately surrounding Sheep Springs, New Mexico, including the land identified as Section 13, Township 22 north, 18 west, New Mexico Principal Meridian, and all adjoining sections, are in Indian Country.

## CONCLUSION

It is **HEREBY ORDERED** that the Government's Motion in Limine for Pre-Trial Determination of Indian Country Land Status (Doc. 31) is **GRANTED**.

The Court **FINDS** that the land identified as Section 13, Township 22 north, 18 west, New Mexico Principal Meridian, as well as all adjoining sections, are in Indian Country.

Dated this 21st day of August, 2012.

                                                            MARTHA VAZQUEZ
                                                          UNITED STATES DISTRICT JUDGE

*Attorneys for Plaintiff:*
Mark T. Baker
Kyle T. Nayback

*Attorneys for Defendant:*
Amy Sirignano
Joseph Riggs